UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
GARY GRIGG,

                    Petitioner,              <u>MEMORANDUM & ORDER</u>
                                             04-CV-0663(JS)
        -against-

WILLIAM PHILLIPS, Superintendent,
Green Haven Correctional Facility,

                    Respondent.
----------------------------------X
APPEARANCES:
For Petitioner:     John Laurence Kase, Esq.
                    Kase & Druker, Esqs.
                    1325 Franklin Avenue, Suite 225
                    Garden City, NY 11530

For Respondent:     Guy Arcidiacono, Esq.
                    Assistant District Attorney of Suffolk County
                    Criminal Courts Building
                    200 Center Drive
                    Riverhead, New York 11901

SEYBERT, District Judge:

        Gary Grigg ("Grigg" or "Petitioner") petitions the Court

for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  For the

reasons below, the Petition is DENIED.

                         <u>BACKGROUND</u>

I.   <u>Procedural History</u>

        Grigg attacks a judgment of conviction entered against

him in the County Court of Suffolk County on October 10, 2001.

After a jury trial, Grigg was convicted of Robbery in the First

Degree and sentenced as a persistent felony offender for an

indeterminate term of imprisonment of twenty-five years to life.

Grigg appealed his conviction to the Appellate Division, Second Department. In his appellate brief, Grigg presented five claims of error: (1) that the prosecution improperly referred to his post arrest silence; (2) various evidentiary errors, such as disclosure to the jury of Grigg's prior arrest record and his homeless status, fatally infected his trial; (3) the prosecutor failed to disclose <u>Brady</u> material; (4) the trial court improperly denied him a brief adjournment; and (5) his sentence as a persistent felony offender violated the Supreme Court holding in <u>Apprendi v. New Jersey</u>, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000).

On November 4, 2002, the Appellate Division, Second Department affirmed Grigg's conviction. <u>People v. Grigg</u>, 299 A.D.2d 367, 749 N.Y.S.2d 159 (2d Dep't 2002). The Appellate Division found that "the trial court providently exercised its discretion in denying" Grigg an adjournment, and found that the persistent felony offender sentencing did not violate his constitutional rights. <u>Id.</u> at 367. The Appellate Division relied upon the New York Court of Appeals' holding in <u>People v. Rosen</u>, 96 N.Y.2d 329, 728 N.Y.S.2d 407, 752 N.E.2d 844 (2001), <u>cert.</u> <u>denied</u>, 534 U.S. 899, 122 S. Ct. 224, 151 L. Ed. 2d 160 (2001), that the persistent felony offender statute was constitutional. <u>Grigg</u>, 299 A.D.2d at 367. The Appellate Division rejected Petitioner's other

claims as "either unpreserved for appellate review or without merit." Id.

Grigg filed a letter requesting leave to appeal to the New York Court of Appeals. Leave was denied on March 3, 2003. People v. Grigg, 99 N.Y.2d 628, 790 N.E.2d 284, 760 N.Y.S.2d 110 (2003). Grigg then filed the Petition in this Court on February 18, 2004.

## II. Factual Background

At approximately 9:00 a.m. on July 20, 2000, Anthony Rooney ("Rooney"), a Long Island Power Authority meter reader, was reading meters at a shopping center located at 807 Montauk Highway in East Patchogue, Suffolk County, New York. (Tr. 23.) While performing his duties, Rooney made eye contact twice with an African American male, who was approaching Rooney. (Tr. 29.) Rooney attempted to enter his automobile, but Grigg grabbed Rooney from behind and held a knife to his throat. (Tr. 31.) Grigg, screaming racial profanities, lifted Rooney off his feet and cut his stomach. (Tr. 31—33.) Grigg then pulled Rooney's wallet out from his pocket; however, there was no money or credit cards in the wallet. (Tr. 33.) Grigg then stabbed Rooney in the thigh. (Id.) Grigg spun Rooney around so that they were face-to-face, pushed Rooney's head against the wall three times, and threw Rooney to the ground. (Tr. 34—35.) Once Rooney was on the ground, Grigg kicked

him, stepped on his hand, and attempted to remove Rooney's wedding ring. (Tr. 35—36.) Grigg then fled on foot. (Tr. 38—39.)

Rooney telephoned the police and was taken to the hospital, where he gave a statement to Detective Robert Berretta. (Tr. 39—40, 47, 100.) Rooney described his assailant as a 6'5" African American male, weighing 250 pounds. (Tr. 58, 100.) He also stated that his assailant had a scar on his arm. (Tr. 59—60.) Rooney identified Grigg as his assailant at trial. (Tr. 43—44.) Rooney's wallet was sent for fingerprint testing; however, the fingerprint found on it did not match Grigg's. (Tr. 103.)

On July 21, 2000, Detectives Berretta and Ferrara went to the crime scene and found Grigg at the shopping center. (Tr. 108.) They questioned Grigg, who stated he was homeless, living in the abandoned Patchogue Inn, and had a drug and alcohol problem. (Tr. 109.) On July 22, 2000, after obtaining a second statement from Rooney, Berretta and Ferrara arrested Grigg about a mile from the crime scene. (Tr. 115.) Berretta read Grigg his <u>Miranda</u> rights and Grigg refused to cooperate, speak with the detectives, or sign any statements. (Tr. 116.) Berretta recorded Grigg's height as 6'1" and his weight as 180 pounds, in addition to noting a scar on Grigg's lip. (Tr. 139—140.) Rooney did not state that his assailant had a facial scar. (Tr. 80.) After his arrest, Grigg refused to appear in a court ordered lineup, which Grigg had

4

requested.  (Tr. 117—18, 120.)

DISCUSSION

The Petition raises the same claims for relief that were found in Grigg's Appellate Division Brief: (1) improper reference to his post-arrest silence; (2) various evidentiary errors; (3) the trial court's failure to grant an adjournment; (4) <u>Brady</u> disclosure violations; and (5) improper sentencing as a persistent felony offender.  Respondent argues that none of the foregoing warrant a writ of habeas corpus.  Respondent maintains that Grigg failed to exhaust his adjournment, <u>Brady</u>, and <u>Apprendi</u> claims by neglecting to mention these grounds in his letter request for leave to appeal to the New York Court of Appeals.  Respondent further contends that even if Grigg's claims were sufficiently exhausted, they should be rejected as procedurally defaulted or otherwise lacking merit.

The Court's review of the Petition is governed by the guidelines set forth at 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214.  The Court will first address the issue of exhaustion and then proceed to the other issues pertinent to the instant Petition.

I.  <u>Exhaustion</u>

One of the most well known barriers to federal habeas relief is the failure to exhaust claims.  "In general, the

5

exhaustion doctrine provides that a habeas petitioner seeking to upset his state conviction on federal grounds must first have given the state courts a fair opportunity to pass upon his federal claim." Daye v. Attorney Gen. of N.Y., 696 F.2d 186, 191 (2d Cir. 1982). The doctrine arises out of principles of comity, see id., and is "designed to protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings." Rose v. Lundy, 455 U.S. 509, 518, 102 S. Ct. 1198, 1203, 71 L. Ed. 2d 379 (1982).

Assessing whether a petitioner has exhausted his claims involves an assessment of two criteria. "First, the petitioner must have fairly presented to an appropriate state court the same federal constitutional claim that he now urges upon the federal courts. . . . Second, having presented his federal constitutional claim to an appropriate state court, and having been denied relief, the petitioner must have utilized all available mechanisms to secure appellate review of the denial of that claim." Klein v. Harris, 667 F.2d 274, 282 (2d Cir. 1981).

A claim is "fairly presented" to the state court when both its factual and legal basis are provided for review. See Picard v. Connor, 404 U.S. 270, 276—77, 92 S. Ct. 509, 512—13, 30 L. Ed. 2d 438 (1971); Daye, 696 F.2d at 191. Whether the factual basis of a claim was made known to the state court is typically a

straightforward inquiry; whether the legal basis of a claim was adequately presented to the state court is often a more difficult issue. A "petitioner may alert the state court to the constitutional nature of a claim without referring chapter and verse to the U.S. Constitution." <u>Ramirez v. Attorney Gen. of N.Y.</u>, 280 F.3d 87, 95 (2d Cir. 2001). The Second Circuit has explained that "the requirement that the state court have been given a reasonable opportunity to pass on the federal habeas claim is satisfied if the legal basis of the claim made in state court was the 'substantial equivalent' of that of the habeas claim. This means . . . that in state court the nature or presentation of the claim must have been likely to alert the court to the claim's federal nature." <u>Daye</u>, 696 F.2d at 192 (internal citations omitted).

According to Respondent, Grigg failed to exhaust his third, fourth, and fifth claims (the claims respectively refer to the trial court's failure to grant an adjournment, the <u>Brady</u> claim, and the <u>Apprendi</u> claim) because he failed to fairly present the claims to the New York Court of Appeals. Respondent refers to the contents of Grigg's letter request for leave to appeal, contending that "the only issue he asked that [c]ourt to consider was that the various evidentiary errors he asserted denied petitioner of a fair trial." Resp. Br. at 3. Grigg responds that each of the grounds

was adequately exhausted. With respect to the third ground, Grigg asserts, and the Court agrees, that he specifically raised the issue in the second paragraph of his letter. As for the <u>Brady</u> and <u>Apprendi</u> claims, Grigg argues he adequately raised the issues to the Court of Appeals by referring to the appellate briefs in paragraph one of his letter. Grigg also argues that he sufficiently raised his <u>Apprendi</u> claim by stating in the first paragraph that he was appealing his sentence as a "persistent felony offender."

On more than one occasion, this Circuit has addressed whether a petitioner's letter request for leave to appeal has fairly presented an issue for the New York Court of Appeals' review or, conversely, amounted to an abandonment of a previously raised appellate ground. <u>See</u> <u>Galdmaez v. Keane</u>, 394 F.3d 68, 74-75 (2d Cir. 2005) (surveying Second Circuit jurisprudence in this area). In <u>Grey v. Hoke</u>, the petitioner raised three claims in his brief to the Appellate Division, but only mentioned one claim in his letter application for leave to appeal to the Court of Appeals. 933 F.2d 117, 120 (2d Cir. 1991). The Second Circuit found the two unmentioned claims were not fairly presented to New York's highest court and, thus unexhausted. <u>Id.</u> The <u>Grey</u> court reasoned, "[t]he fair import of petitioner's submission to the Court of Appeals, consisting of his brief to the Appellate Division that raised three

claims and a letter to the Court of Appeals arguing only one of them, was that the other two had been abandoned. . . . We decline to presume that the New York Court of Appeals has 'a duty to look for a needle in a paper haystack.'" Id. (quoting Mele v. Fitchburg Dist. Court, 850 F.2d 817, 822 (1st Cir. 1998)). Balancing the seemingly harsh outcome of Grey, in Morgan v. Bennett, the Second Circuit found the phrase "[w]e request this [c]ourt to consider and review all issues outlined in defendant-appellant's brief and pro se supplemental brief" sufficient to fairly present for the New York Court of Appeals' review all of the claims contained in the defendant's attached briefs. 204 F.3d 360, 369-70 (2d Cir. 2000) (emphasis omitted).

Put simply, this case lies squarely within the holding of Grey. Grigg raised five grounds in his brief to the Appellate Division, but only mentioned two in his letter request for leave to appeal. The remaining grounds were not fairly presented to the Court of Appeals. The mere attachment of appellate briefs to a letter request for leave does not constitute adequate preservation of all purported errors alleged therein. See Jordan v. Lefevre, 206 F.3d 196, 199 (2d Cir. 2000) ("[A]rguing one claim in [petitioner's] letter while attaching an appellate brief without explicitly alerting the state court to each claim raised does not fairly present such claims for purposes of the exhaustion

requirement underlying federal habeas jurisdiction.").

In addition to relying upon the reference to the appellate briefs, Grigg also claims that he adequately preserved his _Apprendi_ claim by noting in the first paragraph of his letter that he was sentenced as a persistent felony offender. Grigg suggests that a "reasonable jurist" would have construed the reference as preserving an _Apprendi_ claim. _See_ Pet. Reply Br. at 3-4; _see also_ _Ramirez_, 280 F.3d at 96 (finding petitioner's Sixth Amendment ineffective assistance of counsel claim exhausted notwithstanding the claim being styled as a "fair trial" claim because a "reasonable jurist would have perceived such a claim to have been made, albeit rather inartfully").

What a reasonable jurist might glean from Grigg's letter is appropriately evaluated by reviewing the letter as a whole. The pertinent portions are set forth below:

Dear Justice Kay:

I write to apply for leave to appeal to this Court in the above-captioned case from an Order of the Appellate Division, Second Department, dated November 4, 2002, which affirmed a Judgment of the County Court of Suffolk County (Weber, J.) rendered October 10, 2001, convicting the defendant after a jury trial of robbery in the first degree, and sentencing him, as a persistent felony offender, to an indeterminate sentence of imprisonment with a minimum of 25 years and a maximum of life. The order was served with notice of entry on November 13, 2002. A copy of the Decision and Order, as well as Appellant's Brief, Respondent's Brief, and Appellant's Reply Brief, is enclosed herewith.

Appellant wishes to draw the Court's attention to
whether the cumulative effect of evidentiary errors . . .
deprived Mr. Grigg of his right to a fair trial. . . . In
addition, the court refused Mr. Grigg's request for a
reasonable, short adjournment to familiarize new counsel
. . . ."

Pet. Appeal Letter.

The Court disagrees with Grigg that a reasonable jurist

would construe the foregoing as raising an <u>Apprendi</u> claim. The

reference to Grigg's status as a persistent felony offender is

contained in an introductory paragraph that sets forth the

background circumstances of the putative appeal. <u>Apprendi</u> is never

cited and there is no basis upon which the Court of Appeals might

otherwise infer that Grigg was continuing his pursuit of an

<u>Apprendi</u> challenge. Further, the grounds for review are set forth

in the second paragraph, earmarked by the phrase "Appellant wishes

to draw the Court's attention to . . . ." The second paragraph

does not mention Grigg's status as a persistent felony offender,

nor does it mention the prosecutor's purported failure to disclose

<u>Brady</u> material. As explained above, the Court of Appeals would

properly conclude that those claims were therefore abandoned.

    A.   <u>Claims that are Deemed Exhausted Because of a
Procedural Bar</u>

Having concluded that Grigg failed to present his fourth

and fifth claims in his request for leave to appeal, the Court must

consider whether the claims should be "deemed exhausted . . . [as]

procedurally barred under state law." <u>Ramirez</u>, 280 F.3d at 94;
<u>Grey</u> 933 F.2d at 120. The rationale for deeming procedurally
barred claims exhausted is derived from the language of 28 U.S.C.
§ 2254(b)(1)(A), which provides that "[a]n application . . . shall
not be granted unless it appears that the applicant has exhausted
the remedies available in the courts of the State." Where a
petitioner is procedurally precluded from seeking further review of
the claimed error, there are no remedies available in state court
that he can exhaust. <u>See Grey</u>, 933 F.2d at 120.

Similar to the fate that befell the defendant in <u>Grey</u>,
Grigg's unraised fourth and fifth claims are procedurally barred
under New York law. "Petitioner cannot again seek leave to appeal
these claims in the Court of Appeals because he has already made
the one request for leave to appeal to which he is entitled . . .
[and] [c]ollateral review of these claims is also barred because
the issues were previously determined on the merits on direct
appeal." <u>Id.</u> (citing N.Y. Court Rules § 500.10(a) and N.Y.
Criminal Procedure Law 440.10(2)). Grigg has no ability to exhaust
his fourth and fifth claims, so the Court deems those claims
exhausted as procedurally barred.

B.    <u>Procedurally Barred Claims</u>

Where a district court deems a petitioner's claims
exhausted as a result of a procedural bar, the Court may only

review the merits of such claims if the petitioner can "show cause for the default and prejudice attributable thereto, or demonstrate that failure to consider the federal claims will result in a fundamental miscarriage of justice, i.e., a showing of actual innocence." Rosario v. Walsh, No. 05-CV-2684, 2006 WL 1431410, at *18 (S.D.N.Y. May 25, 2006) (internal quotations omitted); Aparicio v. Artuz, 269 F.3d 78, 90 (2d Cir. 2001). If a petitioner is unable to establish "cause and prejudice" or a miscarriage of justice, the claim must be dismissed as procedurally defaulted. Aparicio, 269 F.3d at 90.

Grigg proffers no reason why he failed to present his Brady claim to the Court of Appeals. Accordingly, that claim is dismissed without reaching its merits. See Grey, 933 F.2d at 121 ("Petitioner makes no showing of cause or of prejudice. The . . . claims must therefore be dismissed without reaching the merits."). With respect to his Apprendi claim, Grigg explains that he did not raise the issue to the Court of Appeals because the Court of Appeals "had already ruled on the constitutionality of the issue of the persistent felony offender statute" when the letter was filed. Pet. Reply Br. at 4 n.1. He is presumably referring to the Court of Appeals' holding in Rosen. Grigg ambiguously cites to the holding in Blakely v. Washington, 542 U.S. 296, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004), as evidence that this Court's failure to

consider his <u>Apprendi</u> challenge will result in "severe prejudice."
Pet. Reply Br. at 4 n.1.

Grigg has not satisfied either prong of the "cause and prejudice" standard. First, as a factual matter, his averment concerning "cause" is disingenuous. <u>Rosen</u> was decided in 2001 — approximately six months before Grigg's judgment of conviction and sentence were entered. The holding did not deter Grigg from raising the <u>Apprendi</u> argument in his brief to the Appellate Division and thus should not have deterred him in raising his constitutional claim to the Court of Appeals. Moreover, Grigg's proffer of cause lacks legal sufficiency. In <u>Engle v. Isaac</u>, the Supreme Court declined to find sufficient "cause" to excuse a procedural default where the defendant suggested that any effort to raise the issue before the state court would have been futile. The Supreme Court stated:

> the futility of presenting an objection to the
> state courts cannot alone constitute cause for
> a failure to object at trial. If a defendant
> perceives a constitutional claim and believes
> it may find favor in the federal courts, he
> may not bypass the state courts simply because
> he thinks they will be unsympathetic to the
> claim. <u>Even a state court that has previously
> rejected a constitutional argument may decide,
> upon reflection, that the contention is valid</u>.

<u>Engle v. Isaac</u>, 456 U.S. 107, 130, 102 S. Ct. 1558, 1573, 71 L. Ed.
2d 783 (1982) (emphasis added).

Numerous courts, including courts in this Circuit, have

relied upon <u>Engle</u> in holding that "[a]pparent futility of raising an issue does not excuse procedural default." <u>Jennings v. United States</u>, No. 04-CV-9741, 2005 WL 1387987, at *9 (S.D.N.Y. June 6, 2005); <u>Jones v. Keane</u>, 329 F.3d 290, 295 (2d Cir. 2003) ("But the fact that the New York Court of Appeals may have been unlikely to grant Jones relief on his vagueness claim does not cure his failure to have raised it in state courts. It is well established that a petitioner may not bypass state courts merely because they may be unreceptive to the claim."); <u>Parker v. Kelchner</u>, 429 F.3d 58, 62—64 (3d Cir. 2005) (recognizing authority "that favors extension of the futility doctrine to cases in which the state court has ruled adversely on a similar claim" but agreeing with the "sister Circuits that have reasoned that likely futility on the merits does not excuse a failure to exhaust a claim in state court"); <u>Minter v. Beck</u>, 230 F.3d 663, 666 (4th Cir. 2000) ("As the Supreme Court has recognized in the analogous context of proving 'cause' for procedural default of a habeas claim, 'futility cannot constitute cause if it means simply that a claim was unacceptable to that particular court at that particular time.'" (quoting <u>Bousley v. United States</u>, 523 U.S. 614, 623, 118 S. Ct. 1604, 140 L. Ed. 2d 828 (1998))); <u>but</u> <u>cf.</u> <u>Hawkins v. West</u>, 706 F.2d 437, 440—41 (2d Cir. 1983) (stating that <u>Engle</u>, if taken to "its logical extreme . . . [indicates] that the Supreme Court might reject any futility

exception whatsoever," but finding that the law in this Circuit "do[es] not permit us, however, yet so to hold"). Accordingly, the Court of Appeals' prospective denial of Grigg's Apprendi claim was not sufficient cause to excuse him from raising the claim.

Finally, Grigg cannot establish the requisite prejudice. Indeed, it is now well-settled in this Circuit that Apprendi claims such as Grigg's are lacking in merit. See Brown v. Miller, 451 F.3d 54, 59 (2d Cir. 2006) (Sotomayor, J.); Witherspoon v. Woods, No. 04-CV-5528, 2006 WL 721510, at *4-6 (E.D.N.Y. Mar. 6, 2006), aff'd, 210 F. App'x 115 (2d Cir. 2006). Accordingly, Grigg's Brady and Apprendi claims are hereby DISMISSED due to a procedural default. Grigg's remaining claims, however, have been properly exhausted; accordingly, the Court proceeds further in its review.

II. Federal Habeas Review of State Convictions

Section 2254 provides that a habeas corpus application must be denied unless the state court's adjudication on the merits "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). "A state court 'adjudicates' a petitioner's federal constitutional claims 'on the merits when it

(1) disposes of the claim on the merits, and (2) reduces its disposition to judgment.'" <u>Norde v. Keane</u>, 294 F.3d 401, 410 (2d Cir. 2002) (quoting <u>Sellan v. Kuhlman</u>, 261 F.3d 303, 312 (2d Cir. 2001)).

"Clearly established federal law 'refers to the holdings, as opposed to the dicta, of the Supreme Court's decisions as of the time of the relevant state-court decision.'" <u>Howard v. Walker</u>, 406 F.3d 114, 122 (2d Cir. 2005) (quoting <u>Kennaugh v. Miller</u>, 289 F.3d 36, 42 (2d Cir. 2002)). A decision is "contrary to" established federal law if it either "applies a rule that contradicts the governing law set forth in" a Supreme Court case, or it "confronts a set of facts that are materially distinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [their] precedent." <u>Penry v. Johnson</u>, 532 U.S. 782, 792, 121 S. Ct. 1910, 150 L. Ed. 2d 9 (2001) (citing <u>Williams v. Taylor</u>, 529 U.S. 362, 405-06, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000)). A decision is an "unreasonable application of" clearly established Supreme Court precedent if it "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." <u>Id.</u> (citing <u>Williams</u>, 529 U.S. at 407-08). Accordingly, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly

established federal law erroneously or incorrectly. Rather that application must also be unreasonable." <u>Williams</u>, 529 U.S. at 411.

III. <u>Petitioner's Claims</u>

There are three claims remaining: (1) the reference to Grigg's post-arrest silence violated his Fifth Amendment rights; (2) cumulative evidentiary errors violated Grigg's right to a fair trial; and (3) the denial of a brief adjournment deprived Grigg of a fair trial. The Court considers each issue in turn.

A. <u>References to Grigg's Post-Arrest Silence</u>

"A prosecutor engages in the unconstitutional use of silence against a defendant when the 'fact of [the defendant's] post-arrest silence [is] submitted to the jury as evidence from which it [is] allowed to draw any impermissible inference.'" <u>Farakesh v. Artuz</u>, No. 99-CV-3945, 2000 WL 1480896, at *9 (E.D.N.Y. Oct. 3, 2000) (quoting <u>Greer v. Miller</u>, 483 U.S. 756, 764-65, 107 S. Ct. 3102, 97 L. Ed. 2d 618 (1987)) (alterations in original). The rule was developed in <u>Doyle v. Ohio</u>, where the Supreme Court held, <u>inter alia</u>, that the <u>Miranda</u> warning's "implicit" guarantee that "silence will carry no penalty" rendered it "fundamentally unfair and a deprivation of due process to allow the arrested person's silence to be used to impeach an explanation subsequently offered at trial." 426 U.S. 610, 618, 96 S. Ct. 2240, 2245, 49 L. Ed. 2d 91 (1976). However, if a <u>Doyle</u> violation is found, a

petitioner must still show that it was harmful.   See Leecan v.
Lopes, 893 F.2d 1434, 1442 (2d Cir. 1990); United States v. Nunez-
Rios, 622 F.2d 1093, 1101 (2d Cir. 1980).

Grigg contends that the trial court committed reversible
error by not correcting Detective Berretta's direct testimony
concerning Grigg's post-arrest silence.   Pet. Br. at 9.   The
relevant questioning was as follows:

> Q:   How would you describe his behavior after you
>      put him under arrest?
> A.   At that point he was fine. But by the time we
>      got him into the precinct, he was getting very
>      angry.
> Q.   Did he cooperate with your requests?
> A.   Not at all. Not in the precinct.
> Q.   What did you request?
> A.   I just requested that I wanted to talk to
>      him.  He didn't want to talk to me.  He
>      didn't want to sign anything.  I read him
>      his rights.  He didn't want to sign that
>      I read him his rights.  He wouldn't let
>      us print or photograph him.
> Q.   And that was it?
> A.   That was it.

(Tr. 116.)

Additionally, on summation, the prosecutor stated,

> [Detective] Berretta steps out of the car.
> Informs Mr. Grigg he's under arrest.  At this
> time Mr. Grigg becomes totally unwilling to
> cooperate.  He refuses to sign his Miranda
> card.

> [Detective] Berretta testified that he read
> Mr. Grigg his rights.  Mr. Grigg then
> exercised his right to no longer speak to the
> police department which is respected by the
> police department.  They no longer asked him

questions after that.  He refuses to even
sign, acknowledge his rights were even read to
him.  And then he refused to be printed."
(Tr. 224.)

Petitioner believes that the jury drew negative
inferences from Berretta's testimony and the prosecutor's
statements.  Respondent argues that Petitioner's claim is not
preserved for review, there was no Doyle violation, and even if
there was, the error was harmless.

The Court rejects Respondent's argument that Petitioner
failed to preserve his Doyle claim by not objecting during the
trial.  "[T]he use of a criminal defendant's exercise of his
privilege against self-incrimination against him at trial is
considered a constitutional violation so fundamental that no
objection is necessary to preserve such a claim as an issue of law
for appellate review." Hawkins v. Le Fevre, 758 F.2d 866, 873 (2d
Cir. 1985).  Thus, the Court addresses Petitioner's Doyle claim,
regardless of the fact that Petitioner failed to object during the
trial.

The Court next considers whether there was a Doyle
violation, and finds that there was.  Berretta's testimony, coupled
with the prosecution's summation, improperly used Petitioner's
silence against him.  In both cases, the jury was left to assume
that Petitioner was uncooperative in refusing to speak with the

Detectives.

In its summation, the prosecution remarked that Petitioner was "totally unwilling to cooperate," and almost immediately followed this statement with a reference to Petitioner's silence; specifically, the prosecution stated that Petitioner "exercised his right to no longer speak to the police department," and one line later stated, "He refuses to even sign, acknowledge his rights were even read to him. And then he refused to be printed." There was absolutely no reason to refer to Petitioner's post-arrest silence during the Prosecutor's summation other than to allow the jury to infer that Petitioner's decision to remain silent was part of his "unwilling[ness] to cooperate." "A prosecutor engages in the unconstitutional use of silence against a defendant when the 'fact of [the defendant's] post arrest silence [is] submitted to the jury as evidence from which it [is] allowed to draw any impermissible inference.'" <u>Farakesh v. Artuz</u>, No. 99-CV-3945, 2000 U.S. Dist. LEXIS 14977, at *27 (E.D.N.Y. Oct. 3, 2000) (quoting <u>Greer v. Miller</u>, 483 U.S. 756, 764-65, 97 L. Ed. 2d 618, 107 S. Ct. 3102 (1987).

The prosecutor's improper summation is not cured by its statement that Petitioner had a right to no longer speak. The prosecutor's summation was clearly aimed at convincing the jury that Petitioner's uncooperative behavior was a sign of his guilt.

Briefly mentioning Petitioner's right to remain silent does not undermine the fact that a jury member would naturally conclude that Petitioner's silence contributed to his overall uncooperative behavior, and was another indication of his guilt.

The Court's analysis does not end with finding that there was a <u>Doyle</u> violation.  The Court must next consider whether the constitutional trial error was harmless beyond a reasonable doubt.  After reviewing the transcript and the evidence in this case, the Court finds that the trial court's <u>Doyle</u> error was harmless.  In this case, there was very strong eyewitness testimony from the victim identifying Petitioner.  Rooney testified that he looked directly at Petitioner at least three times and had no doubt whatsoever that Petitioner was the person who robbed him.  (Tr. 44.)  <u>See</u> <u>Pope v. Lord</u>, No. 00-CV-6530, 2003 U.S. Dist. LEXIS 13637, at *19 (E.D.N.Y. July 23, 2003) (finding that the prosecution's "contested statements were relatively harmless when weighed against the compelling eyewitness testimony of the complainant.").

B.   <u>Alleged Evidentiary Errors Denying Petitioner a Fair Trial</u>

"Generally, state court rulings on evidentiary matters are a matter of state law and do not raise constitutional issues.  Such rulings are not reviewable by a habeas court unless the errors

alleged are so prejudicial as to constitute fundamental unfairness." Warren v. Miller, 78 F. Supp. 2d 120, 135 (E.D.N.Y. 2000) (citing Rosario v. Kuhlman, 839 F.2d 918, 924-25 (2d Cir. 1988)). The Court must first determine whether the state court violated a state evidentiary rule, "because the proper application of a presumptively constitutional state evidentiary rule could not be unconstitutional." Id. (citing Brooks v. Artuz, No. 97-CV-3300, 2000 U.S. Dist. LEXIS 15070, at *26 (S.D.N.Y. Oct. 9, 2000) (petitioner did not demonstrate an error under state evidentiary law, "much less" an error of constitutional magnitude)); Jones v. Stinson, 94 F. Supp. 2d at 391—92 (once the federal court has found that the state court ruling was not erroneous under state law, there is no need to apply a constitutional analysis). Petitioner bears a heavy burden because "[e]ven an incorrect state court evidentiary ruling does not rise to the level of constitutional error necessary to warrant habeas relief, unless the error deprived Petitioner of a fundamentally fair trial." Alfini v. Lord, 245 F. Supp. 2d 493, 499 (E.D.N.Y. 2003) (citing McLean v. McGinnis, 29 F. Supp. 2d 83, 93 (E.D.N.Y. 1998)). Therefore, the Court will review for constitutional error only upon a determination that the state court violated state law. See id.

"Due process requires the state courts in conducting criminal trials to proceed consistently with 'that fundamental

fairness' which is 'essential to the very concept of justice.'"
Dunnigan v. Keane, 137 F.3d 117, 125 (2d Cir. 1998) (quoting
Lisenba v. California, 314 U.S. 219, 236, 62 S. Ct. 280, 290, 86 L.
Ed. 166 (1941)).   "The introduction of unfairly prejudicial
evidence against a defendant in a criminal trial is contrary to
both [New York] state law and federal law."   Id. (internal
citations omitted).   See also People v. McKinney, 24 N.Y.2d 180,
184, 247 N.E.2d 244, 246, 299 N.Y.S.2d 401, 404—05 (1969); Fed. R.
Evid. 403 ("Although relevant, evidence may be excluded if its
probative value is substantially outweighed by the danger of unfair
prejudice . . . .").   However, a defendant must show that the
evidence is "so extremely unfair" in order to constitute a Due
Process violation.   Dowling v. United States, 493 U.S. 342, 352,
110 S. Ct. 668, 674, 107 L. Ed. 2d 708 (1990).

    1)   <u>Prior Arrest Record</u>

During the defense's cross-examination of Detective
Berretta, the following exchange took place:

> Q: When you arrested Mr. Grigg, did you fill out a
> lot of paperwork?
> A: Normal amount.
> Q: What was his — what was his type?
> A: I used prior arrest worksheet.

(Tr. 138.)

Defense counsel objected to Berretta's response and moved
for a mistrial.   (Id.)   The court denied the motion, finding

24

Berretta's answer to be responsive to the question. Petitioner argues that the reference to a post-arrest worksheet was improper. Petitioner also finds prejudice in the prosecutor's summation, which included:

> Now he has a name. He thinks the name is Gary. He has a conversation. After that conversation, he goes back to the precinct. Gets on his computer. Does a background check on this man, Gary Grigg. Mr. Grigg becomes a suspect. Not because he was found at the scene. Because of information.

(Tr. 222.)

No objection was made during the prosecutor's summation.

The Court finds that Detective Berretta's answer was responsive to defense counsel's question and did not improperly raise Petitioner's prior arrest record to the jury's attention. The Court further finds that the prosecution's summation was vague and did not create a strong inference that Petitioner had a criminal record. The prosecution did not state that Petitioner had a prior record, but rather merely stated that Petitioner was arrested "[b]ecause of information." The reference to "information" is extremely vague and would not necessarily cause the jury to believe that this "information" was Petitioner's prior arrest record.

In any event, even assuming that the references to Petitioner's prior arrest "were improper, petitioner has not

demonstrated that the statements 'rendered the trial fundamentally unfair.'" <u>Brock v. Donelly</u>, No. 03-CV-2594, 2004 U.S. Dist. LEXIS 7226, at *37 (S.D.N.Y. Apr. 22, 2004) (quoting <u>Greer v. Miller</u>, 483 U.S. 756, 761, 97 L. Ed. 2d 618, 107 S. Ct. 3102 (1988)).

   2)   <u>Grigg's Homelessness</u>

Detective Berretta testified that Petitioner lived in the area of the robbery and was homeless. (Tr. 109.) Specifically, Berretta explained how a person would get from the abandoned Patchogue Inn, where Petitioner was living, to the scene of the robbery. (Tr. 113.) The court denied Petitioner's motion to suppress this evidence finding that "the homeless or homeless-like issue . . . is intertwined with things that would tend to show this person is the one that was involved in the robbery . . . ." (Tr. 7.) The court, however, offered to give the jury a curative instruction if the defense supplied one, which they did not. (<u>Id.</u>)

The Court cannot conclude that the trial court erred by deciding the probative value outweighed the prejudicial effect. <u>See</u> <u>Dunnigan</u>, 137 F.3d at 125; <u>People v. Mateo</u>, 2 N.Y.3d 383, 424, 811 N.E.2d 1053, 1079, 779 N.Y.S.2d 399, 425 (2004); <u>People v. Alvino</u>, 71 N.Y.2d 233, 242, 519 N.E.2d 808, 812, 525 N.Y.S.2d 7, 11 (1987). "[B]alancing the probative value of the evidence against its potential prejudicial effect was a matter to be determined by the trial court . . . in the sound exercise of its discretion."

<u>Alvino</u>, 71 N.Y.2d at 247.  Thus, the trial court is granted great deference and this Court will review the trial court's decision to admit this evidence only for abuse of discretion.  <u>Id.</u>

The trial court did not abuse its discretion by admitting testimony that Petitioner was homeless because the court reasoned that Petitioner's homelessness was so "intertwined" with proving who committed the crime.  (Tr. 7.)  "It is well settled that evidence is relevant if it has any 'tendency in reason to prove any material fact.'"  <u>Mateo</u>, 2 N.Y.3d at 424 (quoting <u>Alvino</u>, 71 N.Y.2d at 241).  Here, Petitioner's homeless status and the fact that he lived in an abandoned inn was relevant because the inn was located only one mile from the crime scene.  The trial court did not abuse its discretion in finding that any prejudicial effect Petitioner suffered due to disclosing his homelessness and residence in the abandoned inn was outweighed by the probative value of this evidence.

### 3)  <u>Bolstering the Victim's Testimony</u>

Petitioner claims the trial court erred by allowing Rooney to say that there was "no doubt" in his mind that Grigg was the person who robbed him.  (Tr. 44—45, 90—91.)  Petitioner further argues this was unduly improper in light of Rooney's "weak" identification testimony.  Nonetheless, Petitioner did not object to this testimony during trial, leaving the issue unpreserved for

review.  See People v. West, 56 N.Y.2d 662, 663, 436 N.E.2d 1313, 451 N.Y.S.2d 711 (1982) (to preserve a claim of improper bolstering, a defendant must "object[] to [the] testimony on the specific ground that it constituted improper bolstering.").

"[T]he failure to make appropriate objection under New York's contemporaneous objection rule, absent a showing of cause for failure to do so and prejudice arising from the admission of the evidence for the purpose indicated, forecloses habeas corpus review." Carrion v. Scully, 517 F. Supp. 691, 693 (S.D.N.Y. 1981); see also Wainwright v. Sykes, 433 U.S. 72, 87, 97 S. Ct. 2497, 2506, 53 L. Ed. 2d 594 (1997) (finding that federal habeas review is barred due to a waived objection absent a showing of cause and prejudice).  Here, Petitioner failed to object to the line of questioning he now claims is improper bolstering, and thus did not preserve this claim for appellate review.  See Bablin You v. Bennett, No. 00-CV-7514, 2003 U.S. Dist. LEXIS 13628, at *13 (E.D.N.Y. July 29, 2003) (improper bolstering claim was "procedurally barred because petitioner's trial counsel failed to make timely objections and preserve the arguments for appellate review.").  Petitioner has not shown cause or prejudice for this default.

In any event, the Court finds that Petitioner's argument is meritless.  Bolstering is improper because of "the possibility

that mere repetition by a third party that an identification was made will improperly influence the jury's belief in the reliability of the identification." People v. Bolden, 58 N.Y.2d 741, 743, 445 N.E.2d 198, 199—200, 459 N.Y.S.2d 22, 24 (1982)). Here, there was no improper repetition of an identification by a third-party, nor was there any reference to an earlier or out-of-court identification. Rather, the victim himself identified Petitioner in the courtroom and testified that there was "no doubt" in his mind that Petitioner was the person who robbed him. The Court finds that this was not improper bolstering.

### 4) Fingerprint and Lineup Testimony

Petitioner argues that the trial court erred by permitting the prosecution to admit evidence of Petitioner's failure to appear for a line-up and refusal to be finger-printed as consciousness of guilt. The Court disagrees. "The government has a right to obtain prints pursuant to a lawful custodial arrest . . . and appellants' refusal to provide prints was admissible as evidence of consciousness of guilt." United States v. Terry, 702 F.2d 299, 314 (2d Cir. 1983) (internal citations omitted). Similarly, the Court finds that the trial court properly admitted Petitioner's failure to appear for a line-up, which Petitioner himself requested, as consciousness of guilt.

In any event, "[t]he introduction of improper evidence

against a defendant does not amount to a violation of due process unless the evidence 'is so extremely unfair that its admission violates fundamental conceptions of justice.'" <u>Dunnigan v. Keane</u>, 137 F.3d 117, 125 (2d Cir. 1998) (quoting <u>Dowling v. United States</u>, 493 U.S. 342, 352, 107 L. Ed. 2d 708, 110 S. Ct. 668 (1990)). Petitioner has not shown that the trial court's decision to admit this evidence was so extremely unfair that it violated due process.

C.   <u>Denial of Adjournment</u>

Petitioner argues that the trial court erred in denying him a short adjournment.  On appeal, the Appellate Division found

> the trial court providently exercised its discretion in denying the defendant's request for an adjournment made on the eve of trial. The defendant failed to meet his burden of demonstrating that the requested adjournment was necessitated by forces beyond his control and was not a dilatory tactic . . . . In addition, the defendant did not specify how he would be prejudiced if the trial were not adjourned.

<u>People v. Grigg</u>, 299 A.D.2d 367 (2d Dep't 2002) (internal citations omitted).

The Court agrees with the the Appellate Division. "Determinations on motions for adjournment are 'made in the discretion of the trial judge, the exercise of which will ordinarily not be reviewed.'" <u>Rosario v. Burge</u>, 542 F. Supp. 2d 328, 339 (S.D.N.Y. 2008) (quoting <u>Avery v. Alabama</u>, 308 U.S. 444, 446, 60 S. Ct. 321, 84 L. Ed. 377 (1940)); <u>see</u> <u>also</u> <u>Drake v.</u>

Portuondo, 321 F.3d 338, 344 (2d Cir. 2003) ("Scheduling is a matter that is of necessity committed to the sound discretion of the trial court."). Here, the trial judge denied Petitioner's request for an adjournment, stating, "I might even agree with you except for one thing. This case is not a difficult case." (Tr. 4.) The Court finds that the trial court did not abuse its discretion in determining that an adjournment was not warranted.

CONCLUSION

For the foregoing reasons, Grigg's Petition for writ of habeas corpus is DENIED in its entirety. The Clerk of the Court is directed to mark this matter closed.

To obtain a Certificate of Appealability, Petitioner must a demonstrate "that reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Drake v. Portuondo, 321 F.3d 338, 344 (2d Cir. 2003) (internal quotation marks and citations omitted). The Court finds that reasonable jurists would not debate any of the issues presented in this habeas petition with the exception of Petitioner's claim that a Doyle violation occurred in his underlying trial. Thus, the Court GRANTS a Certificate of Appealability solely on the issue of whether Petitioner's constitutional rights were violated by the references during the

trial to Petitioner's post-arrest silence.

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated:     Central Islip, New York
           September  11 , 2009